Jerome M. THUNE, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 93–CV–0298–B.

United States District Court,
D. Wyoming.

Jan. 11, 1995.

James K. Lubing, Jackson, WY, for plaintiff.

Aleksander D. Radich, Asst. U.S. Atty., Cheyenne, WY, for defendant.

## ORDER DISMISSING PLAINTIFF'S CLAIM

BRIMMER, District Judge.

The above entitled matter, having come before the Court on the defendant's Motion for Summary Judgment, and the Court, having reviewed the materials on file herein, both in favor of and in opposition to, and having heard the oral argument of the parties, and being fully informed in the premises, FINDS and ORDERS as follows:

### Background:

In 1989, the United States Forest Service (hereinafter USFS), the Wyoming Game and Fish Department, and the Rocky Mountain Elk Foundation formed a plan to improve a cooperative wildlife habitat that targeted the elk population in the Bridger–Teton National Forest. Part of this plan called for controlled fires to reduce sagebrush to increase herbaceous forage production for the elk. Pursuant to the Forest Service Manual, burn plans were developed for the area and Mr. John Chapman, an employee of the USFS, was designated as the "burn boss" responsible for the fires.

In accordance with the burn plan, Mr. Chapman daily conducted on-site measurements of temperature and wind speed and requested spot forecasts from the National Weather Service. On October 14, 1991, Mr. Chapman received a forecast for the Dry Cottonwood area that showed favorable conditions for the controlled burn. As the fire began, the winds in the area were gusting over twenty-five miles per hour, but remained about fifteen miles per hour within the burn units. Although the fire showed signs of spreading beyond its boundaries on October 14, 1991, it was contained by the efforts of Mr. Chapman and his team.

When Mr. Chapman returned on October 15, 1991, he found the area still burning and closely monitored the situation. After wind and weather changes at about 2:30 p.m., Mr. Chapman declared the fire a "wildfire" and ordered a full fire suppression effort. State and federal officials proceeded to notify hunt-

ers and campers in the area of the approaching fire.

Chapman's team had limited success in containing the fire and was joined by a Type II overhead team headed by Incident Commander Fred Judd. Mr. Judd took over the fire fight and, on October 16, ordered more manpower and equipment to fight the fire. The weather on October 16 brought forty to fifty mile per hour winds and Mr. Judd ordered that the area be evacuated.

At this time, Plaintiff Thune was working as a guide for game hunters under a license from the USFS. As part of his guide business, the plaintiff maintained a base camp where he stored most of his hunting equipment. Plaintiff's base camp was in the area to be evacuated and he was notified about the approaching fire and ordered to get out. With the assistance of the USFS and Game and Fish personnel, the plaintiff fled the area with his pack horses and some equipment. Plaintiff left behind much of the gear from the camp since it would require six to nine hours to pack it out. Plaintiff's camp was destroyed by the fire in the late afternoon of October 16, 1991.

Mr. Judd, concerned about the ability of his crew to contain the fire, called for a more experienced Type I team to take over the containment efforts. After several more days the "Dry Cottonwood Fire," as it became known, was finally stopped by a snow storm. A fire that was expected to burn 3,000 acres destroyed a total of 7,100 acres.

Plaintiff filed an administrative claim for $43,609.62, the amount he claimed he lost due to the fire. This claim was denied and the plaintiff filed his complaint with this Court on October 4, 1993. In his Complaint, the plaintiff claimed damages for negligence in starting the fire and failing to contain it early. Plaintiff also made a second claim for inverse condemnation. This second claim was withdrawn after the plaintiff acknowledged that the Federal Court of Claims had exclusive jurisdiction over it.

In its answer, the United States argued that the claim was barred by the discretionary exception to the Federal Tort Claims Act and that the plaintiff was contributorily negligent. On September 2, 1994, the defendant filed the pending Motion for Summary Judgment the Court now considers.

### *Discussion:*

#### *Standard of Review:*

 Plaintiff is correct in his assertion that the defendant's motion for summary judgment should be a motion to dismiss under Fed.R.Civ.P. 12(b)(1) because it challenges the Court's jurisdiction under the Federal Tort Claims Act. *Zumwalt v. United States,* 928 F.2d 951, 952 (10th Cir.1991). Nevertheless, the Court may consider some extrinsic evidence without rendering the motion a motion for summary judgment. *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988). Thus, while the Court must take the allegations of the complaint as true, it will consider evidence relevant to the Federal Tort Claims Act and the discretionary function exception asserted by the defendant.

#### *The Discretionary Function Exception:*

The Federal Tort Claims Act allows suits against the United States in limited circumstances. 28 U.S.C. § 2671 *et seq.* The exceptions found in the Act itself are codified at 28 U.S.C. Section 2680. Part (a) of this section is the discretionary function exception that is the focus of this case. That section reads,

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance of the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

Courts have adopted a two-step analysis of the discretionary function exception: (1) Whether the challenged action is a matter of judgment or choice by the actor, and (2) Whether the conduct is based on considerations of public policy. *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991); *Johnson v.*

*U.S. Dept. of Interior,* 949 F.2d 332, 336 (10th Cir.1991). When the trial court applies this two-step analysis, it is cautioned not to participate in judicial second guessing. *Gaubert,* 499 U.S. at 322–323, 111 S.Ct. at 1273–74. The Supreme Court has directed that under the Federal Tort Claims Act (FTCA), "[f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory scheme." *Id.* at 324–325, 111 S.Ct. at 1274–75.

On its face, the first cause of action in the complaint would appear to meet this requirement. The first cause of action is a straightforward negligence claim that seemingly is not grounded on public policy. However, the Court also recognizes the Supreme Court's caution about judicial second guessing that weighs against the plaintiff's claim of negligence.

*1. Whether the challenged action is a matter of judgment or choice by the actor:*

■ Plaintiff's Complaint alleges that the United States, through its agents, was negligent in setting and controlling the Dry Cottonwood fire and in failing to warn the plaintiff in time for him to evacuate all his equipment. The consideration of this element is not difficult. Mr. Chapman's decision to set the controlled burn was based on many different factors before him at that time. He had to consider the temperature, the wind, the weather forecast, the season and other considerations, including the broad policy behind the burns. Although burn plans had been developed, the ultimate decision of whether the burn should proceed was based on the judgment of Mr. Chapman. *See, Forest Service Manual* § 5142.23 (outlining discretion and responsibilities of the burn boss of a controlled fire).

■ Similarly, Mr. Chapman and Mr. Judd used their judgment and experience in fighting the Dry Cottonwood fire, and related officials used their judgment on when to give the plaintiff a final notice that he had to leave the area. These kind of judgment calls are exactly what the Supreme Court had in mind

when it cautioned against "judicial second guessing." As the protector of public lands the federal government and agents of the United States are entrusted with many discretionary decisions and these actions should not be hampered by hindsight judgments by judges and juries. *See, Zumwalt v. United States,* 928 F.2d 951, 956 (10th Cir.1991) (policy against judicial second guessing of the discretionary function exception applied to dismiss plaintiff's negligence claim based on National Park Service's maintenance of a trail); *and Johnson v. United States,* 949 F.2d 332 (10th Cir.1991) (upholding District of Wyoming decision that plaintiffs' negligence claim against National Park Service blocked by the discretionary function exception to the FTCA). Therefore, the Court concludes that the actions of the defendant's agents were a result of judgment or choice and should not be subject to suit.

*2. Whether the conduct is based on considerations of public policy:*

■ As discussed above, Mr. Chapman started the Dry Cottonwood fire in furtherance of a policy of the USFS and the Wyoming Game and Fish Department to increase the population of elk. A necessary part of the policy required controlled burns to increase the vegetation needed by the elk. Defendant has supplied evidence of detailed burn plans developed towards the goal. Therefore, the conduct of Mr. Chapman in starting the fire was clearly based on the consideration of public policy.

■ Likewise, the efforts of Mr. Chapman and Mr. Judd in fighting the Dry Cottonwood fire were based both on their experience and the established fire fighting policies of the USFS. The conduct of both conducting controlled fires and fighting wildfires is outlined by the Forest Service Manual (FSM). *See, Forest Service Manual* § 5143.3(4) (outlining factors to be considered in controlled burns) *and* § 5131(2) (elements to be weighed in efforts to control out of control fires). The affidavits of Mr. Judd and Mr. Michael Monahan, a Regional Fuels Specialist for the USFS, support the defendant's claim that efforts to fight wildfires, including the Dry Cottonwood fire, were the

result of developed strategies and policies. Therefore, the efforts to fight the escaped fire, including the evacuation of the plaintiff, are governed by considerations of public policy and protected by the discretionary function exception.

In considering the plaintiff's claim, the Court is guided by a case with surprising similarity, *Parsons v. United States,* 811 F.Supp. 1411 (E.D.Cal.1992). In *Parsons* the plaintiffs alleged negligence by the USFS in fighting a wildfire that destroyed the plaintiffs' property. Specifically, the *Parsons* plaintiffs claimed that the USFS was ill-equipped to contain a wildfire and their property was damaged, in part, by burnout fires started to starve the main fire. According to the opinion, the plaintiffs offered sixteen separate examples of the alleged negligence by the fire fighters. *Id.* at 1415–1416.

Like the instant case, the *Parsons* plaintiffs argued that the actions of the fire fighters violated the policies of the USFS, but could not point to any regulations creating a clear duty for the governmental actors. Judge Wagner concluded that the plaintiffs' negligence claims were barred by the discretionary function exception to the Federal Tort Claims Act (FTCA) and granted summary judgment for the United States. While Judge Wagner's decision is not binding on this Court, its similarity to the facts of this case make it quite persuasive.

Of particular note is Judge Wagner's quotation of the Ninth Circuit's conclusion that "[i]f the presence of negligence were allowed to defeat the discretionary function exception, the exception would provide a meager shield indeed against tort liability." *Id.* at 1416 quoting *Kennewick Irrigation Dist. v. United States,* 880 F.2d 1018, 1029 (9th Cir. 1989). The Court finds wisdom in the Ninth Circuit's view and concludes that the plaintiff's claim should be dismissed in light of this precedent.

### *Conclusion:*

■ Both of the plaintiff's claims are barred by a lack of subject matter jurisdiction. Plaintiff's first claim is barred by the discretionary function exception to the Federal Tort Claims Act and the proper forum for the plaintiff's second claim is the Federal Court of Claims.

Therefore, it is **ORDERED,** that the defendant's Motion for Summary Judgment is properly a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), and plaintiff's claims should be, and the same hereby are, **DISMISSED** for lack of subject matter jurisdiction.