**ESTATE of Adam HARSHMAN, Rachel Harshman, Brooks Harshman and Lauren Harshman, Plaintiffs,**

v.

**JACKSON HOLE MOUNTAIN RESORT CORPORATION, a Wyoming Corporation, United States of America, and Does 1 through 30, inclusive, Defendants.**

No. 01–CV–0100–B.

United States District Court, D. Wyoming.

April 29, 2002.

Robert E. Schroth, Jackson, WY, for plaintiff.

James K. Lubing, Jackson, WY, Mikel L. Moore Christensen, Moore, Cockrell, Cummings & Axelberg, Kalispell, MT, for Jackson Hole Mountain Resort.

Carol A. Statkus, Assistant U.S. Attorney, Cheyenne, WY, for United States of America.

### ORDER GRANTING DEFENDANT UNITED STATES' MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

This case arises from the tragic death of Adam Harshman, who was fatally injured while snowboarding in a man-made terrain park at the Jackson Hole Mountain Resort. The matter is currently before the Court on the Defendant United States' Motion to Dismiss for lack of subject matter jurisdiction, and Defendants' Motion for Summary Judgment and Jackson Hole Mountain Resort Corporation's Alternative Motion for Summary Judgment. Upon reading the briefs, hearing oral argument, and being fully advised of the premises, the Court **FINDS** and **ORDERS** as follows:

### Statement of Parties and Jurisdiction

Plaintiff Rachel Harshman is the duly appointed, qualified and acting Personal Representative of the Estate of Adam Harshman ("Decedent"). Rachel Harshman, the Decedent's Mother, is bringing this action in her capacity as Personal Representative of the Estate of Adam Harshman, and as an individual. Plaintiff Brooks Harshman is the Decedent's father, and Plaintiff Lauren Harshman is the Decedent's sister. The Decedent, Adam Harshman, was a sixteen year old boy who was fatally injured while snowboarding over a manmade jump in the terrain park at the Jackson Hole Mountain Resort.

Defendant Jackson Hole Mountain Resort Corporation ("JHMRC"), is a corporation duly organized and existing under the laws of the State of Wyoming. Defendant JHMRC operates the Jackson Hole Mountain Resort located at Teton Village, County of Teton, Wyoming. Defendant United States of America is the owner of the real property known as the Jackson Hole Ski Area located at Teton Village, County of Teton, Wyoming. Defendant JHMRC operates the Jackson Hole Mountain Resort pursuant to a Special Use Permit and Operating Plan between the United States Forest Service and the JHMRC. Defendant JHMRC pays a ski area permit rental charge pursuant to 16 U.S.C. § 497c(b), any applicable federal regulations, and the Special Use Permit to the United States in order to operate the ski area and resort on National Forest System land.

Plaintiff has brought this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). Yet, as will be discussed below, the Court **FINDS** that it lacks subject matter jurisdiction over Plaintiffs' claims against Defendant United States. However, the Court **FINDS,** and the parties at oral argument agreed, that in the interest of justice the Court shall maintain supplemental jurisdiction pursuant to 28 U.S.C. 1367 over the Plaintiffs' state law cause of action against Defendant JHMRC.

## BACKGROUND

On February 28, 2000, sixteen year old Adam Harshman ("Decedent"), a life long resident of Jackson Hole, Wyoming, and holder of a season pass at the Jackson Hole Mountain Resort, was fatally injured while snowboarding over a jump in the man-made terrain park at the Jackson Hole Mountain Resort Ski Area. The fatal injury occurred when Decedent, after snowboarding off the twenty-five foot high man-made tabletop jump landed on his upper back and head.

The Terrain Park was a specially designated and roped-off area at Jackson Hole Mountain Resort, which contained man-made obstacles including the tabletop jump in question, and a half pipe for use by skiers and snowboarders. The Decedent had been snowboarding for a number of years prior to his fatal accident and had used the tabletop jump on a number of occasions, including the day prior to his fatal accident.

Plaintiffs claim that the employees of Defendant JHMRC charged with maintaining the terrain park, the park and pipe crew,[1] would inspect and test the jumps at the terrain park each morning for any changes in the jumps from the prior day, and test the jumps throughout the day. The park and pipe crew altered the tabletop jump the night before Decedent's fatal injury, and Plaintiffs argue that the park

and pipe crew only performed one test of the tabletop jump the day of Decedent's tragic accident.[2]

Plaintiffs' Complaint lists four causes of action: Count One, Wrongful Death; Count Two, Premises Liability; Count Three, Complaint for Damages for Personal Injury Based on Negligence By Recreational User Against Owner of Real Property; and Count Four, Negligent Training and/or supervision. In support of Counts One, Two and Three, Plaintiffs allege that Defendants negligently maintained, controlled, managed, and operated the terrain park, in that Defendants knew or should have known the terrain park was at all times in a dangerous condition and constituted an unreasonable risk of harm, which Defendants failed to warn of.[3] In support of Count Four, Negligent Training and/or Supervision, Plaintiffs allege that Defendants knew that Defendants Does 1 through 15 were neither qualified nor able to safely design, construct, operate, and maintain the terrain park.

Defendants argue that Decedent was an experienced snowboarder, who had been snowboarding since the age of ten, who was a member of the Jackson Hole Ski Club, and had held a season pass at both Jackson Hole Mountain Resort and Snow King for three or four years prior to the February 28, 2000 accident. Defendants

1. The park and pipe crew consisted of seven individuals: Supervisor Sean O'Leary; Assistant Supervisors Ammon Smith, and JT Schoonover; and crew members Jevne Schwartz, Blake Pitman, Roeshan Shadravan, and TJ Thompson.

2. However, it appears that the tabletop jump in question was used a number of times by snowboarders, apparently without incident, on the same day, yet prior to Decedent's fatal accident.

3. Plaintiffs claim that Defendants were negligent in the following areas: 1) Permitting the

operation of a terrain park, which Defendants knew or should have known are extremely dangerous and cause severe injuries to skiers and snowboarders; 2) failing to require the terrain park and its features be professionally designed, constructed, and maintained to strict safety standards; 3) failing to require users of the terrain park to enroll in and complete a safety course; 4) failing to require minors to have written parental permission; 5)failing to require that jumps be monitored; 6) failing to require landing areas be of sufficient length and pitch; 7) failing to control the speed of the snowboarders using the jump.

claim that the terrain park was separated from the general ski area and that it was surrounded by a fence and gate with a sign warning those of the risks associated with the terrain park. Defendants also allege that at the time of the accident, there were no established standards on how to build a tabletop jump and that the operation and maintenance of this jump was left to the discretion of the park and pipe crew.

## ANALYSIS

### I. Defendant United States' Motion to Dismiss

Plaintiffs' claims against Defendant United States relate to the level of regulation of snowboarding and the level of regulation of the ski area permitee, Defendant JHMRC. Defendant United States argues that Plaintiffs' allegations must be dismissed for lack of subject matter jurisdiction, as the United States contends that the claims against it cannot be maintained under the FTCA's discretionary function exception, 28 U.S.C. § 2680(a). Defendant United States claims that it is protected by the discretionary function exception, in that allowing Defendant JHMRC to operate and determine the manner in which the ski area and terrain park will be operated, as well as the Defendant United States' level of involvement in the regulation of snowboarding at the ski area and terrain park, is purely a matter of judgement for the United States Forest Service ("USFS"). The United States further argues that the degree of regulation of snowboarding and choice to allow Defendant JHMRC to operate the ski area and terrain parks with limited oversight is a discretionary decision based on considerations of public policy, which the discretionary function exemption was intended to protect.

Plaintiffs argue that the United States does not qualify for the FTCA's discretionary function exception because the Government's decisions regarding the ski area are not based on the USFS's discretionary judgment. Plaintiff contends that the USFS's role in oversight, management, and regulation of snowboarding and the ski area permitee, Defendant JHMRC, is specifically prescribed by the Special Use Permit and the 1999–2000 Winter Operating Plan between the United States and JHMRC. Plaintiffs further claim that Defendant United States' decision regarding the oversight and regulation of snowboarding at the terrain park is not grounded upon considerations of public policy.

### Subject Matter Jurisdiction 12(b)(1)

In challenging the existence of subject matter jurisdiction pursuant to Rule 12(b)(1), a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *United Tribe of Shawnee Indians v. United States,* 253 F.3d 543, 547 (10th Cir.2001) (citing *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995)). By allowing this, the Court does not presume the truthfulness of the complaint's factual allegations, "but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* The Court may consider some extrinsic evidence in determining a 12(b)(1) motion under the FTCA without rendering the motion a motion for summary judgment. *Thune v. United States,* 872 F.Supp. 921, 923 (D.Wyo.1995).

### Federal Tort Claims Act ("FTCA")

The FTCA, 28 U.S.C. § 1346(b), generally authorizes suits against the United States for damages:

[F]or injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where

the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[4]

This broad waiver of sovereign immunity is limited by a number of exceptions contained in the FTCA. The exception relevant to the present action is the discretionary function exception which in pertinent part provides that no liability shall lie for:

> Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

"The discretionary function exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.' *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). Application of this exception is therefore a threshold issue—a jurisdictional issue which precedes any negligence analysis. *See Miller v. United States*, 710 F.2d 656, 662 (10th Cir.), cert. denied, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983)." *Johnson v. United States Department of Interior*, 949 F.2d 332, 335–36 (10th Cir.1991).

■ The principles set forth in *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), guide this Court's application of the discretionary function exception. *Johnson*, 949 F.2d at 336; *Thune v. United States*, 872 F.Supp. 921, 923–924 (D.Wyo.1995). *Ber-*

*kovitz* adopted a two-step analysis of the discretionary function exception: First, the court must consider whether the challenged action is a matter of choice for the acting employee. *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954; *Johnson*, 949 F.2d at 336; *Thune*, 872 F.Supp. at 923–24. "Thus, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive. If the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954.

Second, if the conduct in question involves an element of judgment, the court must then determine whether that judgment is of the kind Congress intended to shield through the exception. *Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. 1954; *Johnson*, 949 F.2d at 336. Discretionary actions that Congress intended to shield are only those "governmental ... decisions based on considerations of public policy—decisions grounded in social, economic and political policy." *Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. 1954; *Johnson*, 949 F.2d at 336 (quoting *Varig Airlines*, 467 U.S. at 814, 104 S.Ct. 2755). "In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz*, 486 U.S. at 537, 108 S.Ct. 1954.

■ When the trial court applies this two-step analysis, it is cautioned not to participate in judicial second guessing. *Thune*, 872 F.Supp. at 923–24 (citing *United States v. Gaubert*, 499 U.S. 315, 322–23,

---

4. There is currently no dispute as to whether Plaintiffs' Complaint has stated a claim that falls within the general waiver of immunity, as the Plaintiffs' claim appears to state a claim for relief under the relevant Wyoming law.

111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)). "The basis for the discretionary function exception was Congress' desire to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz,* 486 U.S. at 536–37, 108 S.Ct. 1954 (quoting *Varig Airlines,* 467 U.S. at 814, 104 S.Ct. 2755).

## II. Whether the Challenged Conduct is a Matter of Judgment

Plaintiff claims that the Special Use Permit and Winter Operating Plan between JHMRC and the United States Forest Service was a regulation or policy that specifically prescribed a course of action for the USFS to follow. Defendant United States claims that there are no federal statutes, rules, or policies that pertain to the regulation of snowboarding at terrain parks or jumps within them on Federal land, nor are there any regulations or statutes that specifically prescribe how the USFS is to delegate the primary safety and operational duties to the ski area permitee while maintaining broad oversight responsibilities. The United States further argues that the Special Use Permit and Winter Operating Plan delegates the day-to-day monitoring and oversight to JHMRC, and that the manner in which the USFS monitors Defendant JHMRC's operation and regulation of snowboarding and other activities at the ski resort and terrain park are the discretionary choices of the USFS.

In order to determine whether a specific policy, statute, or regulation applies to the United States and its relationship with the Defendant JHMRC, it is necessary for the Court to review the most pertinent statutes, regulations, and policies that impact the regulation of snowboarding, the operation of ski areas, and the terrain parks within them, on National Forest System land.

The National Forest Organic Act states that National Forests may be established for "the purpose of securing favorable conditions of water flows, and to furnish a continuous supply of timber for the use and necessities of the citizens of the United States." 16 U.S.C. § 475. The Multiple–Use Sustained–Yield Act of 1960 ("MUSYA") states that "the national forests are established and shall be administered for *outdoor recreation,* range, timber, watershed, and wildlife and fish purposes." 16 U.S.C. § 528 (emphasis added). The National Forest Management Act ("NFMA") restates the multiple uses as *"outdoor recreation, range, timber, watershed, wildlife and fish,* and *wilderness."* 16 U.S.C. § 1604(e)(1) (emphasis added).

Regulatory guidance which may shed light on this issue is found at 36 C.F.R. 251.50, states that all commercial uses of National Forest lands, except timber, mineral, and livestock operations, are designated as special uses and must be authorized. Statutory guidance provides that the Secretary of Agriculture is authorized to issue ski area permits for the use and occupancy of suitable lands within the National Forest System for nordic and alpine skiing operations and purposes. 16 U.S.C. 497b.[5]

5. Ski area permits may be granted by the Secretary of Agriculture provided that a ski area permit:
   (1) *may be issued* for a term not to exceed 40 years;
   (2) shall ordinarily be issued for a term of 40 years (*unless the Secretary determines*

that the facilities or operations are of a scale or nature as are not likely to require long-term financing or operation), or that there are *public policy reasons* specific to a particular permit for a shorter term;
   (3) shall encompass such acreage *as the Secretary determines* sufficient and appro-

Another source for potential policy guidance is the Forest Service Manual ("FSM"). Title 2700 of the FSM covers special use management, specifically FSM 2716.51 states that permitees (including Defendant JHMRC) have the responsibility of inspecting the areas covered by the special use permit, and ensuring that the public safety, health, and welfare are adequately protected. Section 2716.25 of the FSM indicates that the USFS shall inspect the area covered by the permit in order to determine permit compliance, with section 2716.53 of the FSM setting forth the frequency of such inspections.

Regarding the Special Use Permit issued to Defendant JHMRC by the Defendant United States, the permit specifically designates the responsibility for inspecting hazards to Defendant JHMRC, with the USFS retaining the right to temporarily suspend operations at the discretion of the USFS, and the USFS being able to inspect JHMRC's operations at any time. Special Use Permit, Part V.EII.F & XI.B. The Winter Operating Plan for 1999–2000, which is incorporated into the Special Use Permit, states that Defendant JHMRC is responsible for public health and risk management within the ski area and thus the terrain park. 1999–2000 Winter Operating Plan, Jackson Hole Mountain Resort, Section A (Delegating the day-to-day operations and safety oversight, including the regulation of snowboarding at the ski area and terrain park within it, to Defendant JHMRC). The Winter Operating Plan also places oversight and compliance of the Special Use Permit with the USFS. *Id.* at Section B (Placing the broad oversight of JHMRC's day-to-day operations, safety responsibilities, and regulation of snowboarding with the USFS).

After reviewing the regulatory and statutory scheme stated above, it is apparent that there is nothing that specifically prescribes a course of conduct forcing the USFS to regulate snowboarding, nor is there anything for the USFS to specifically follow when regulating terrain parks within ski areas on National Forest land. Further, nothing indicates that the United States cannot allow Defendant JHMRC to operate the ski area and terrain park, and nothing specifically prescribes the degree of regulation and supervision the USFS must exercise over Defendant JHMRC's operation and maintenance of the terrain park.

All of the statutes and regulations reviewed by the Court clearly demonstrate the essence of discretion. In each of the provisions, an employee or agent of the USFS is charged with a broad oversight duty to maintain permit compliance. Yet, none of the statutes, regulations, or policies prohibit the delegation of such authority, nor do they prescribe how such functions should be carried out by the USFS. Additionally, none of these statutes, regu-

priate to accommodate the permitee's needs for ski operations and appropriate ancillary facilities;
(4) *may be renewed* at the discretion of the Secretary;
(5) *may be cancelled* by the Secretary in whole or in part for any violation of the permit terms or conditions, for nonpayment of permit fees, or upon the determination by the Secretary in his planning for the uses of the national forests that the permitted area is needed for higher public purposes;
(6) *may be modified* from time to time by the Secretary to accommodate changes in plans or operations in accordance with the provisions of applicable law;
(7) shall be subject to such reasonable terms and conditions *as the Secretary deems appropriate;* and
(8) shall be subject to a permit fee based on fair market value in accordance with applicable law.
16 U.S.C. § 497b (emphasis added). This statutory provision clearly indicates the broad grant of discretion given to the Secretary of Agriculture in issuing ski area permits on National Forest System land.

lations, or policies specifically indicate that the USFS must regulate snowboarding. Thus, the applicable statutes and regulations leave the manner of oversight and general inspection within the sound judgment of the USFS. For instance a number of the statutes and regulations broadly indicate "outdoor recreation" as a basic goal behind the USFS's management of National Forest land; thereby leaving the manner in which such general goals are achieved to be determined through other regulations and policies. This scheme ultimately grants a great deal of discretion to the USFS.

Statutory and regulatory language reserving the rights of oversight and general inspection authority for ski area permit compliance to the USFS does not designate how a ski area, especially a terrain park within a ski area, is to be operated, managed or designed. Nothing in these regulations indicate how such a terrain park should be established and inspected, or how snowboarding should be regulated and occur at these areas. Therefore, it is apparent that no statute, regulation, or policy specifically prescribes a course of action for the USFS to follow regarding terrain parks and snowboarding within ski areas on National Forest land, including those involved in this action. Decisions as to the extent or nature of regulations of ski and snowboarding terrain parks at permitted ski areas on National Forest Land is truly part of the USFS's independent judgment.

Additionally, Plaintiffs argue that in order to fall under the protection of the discretionary function exception, the USFS must not engage in any regulation or oversight of the premises whatsoever, and if such oversight or inspection occurs, then the discretionary function protections are lost. This argument, that the discretionary function is an all or nothing proposition, has not, and cannot be accepted. Partial regulation did not prevent the application of the discretionary function exception to the United States in *United States v. Varig Airlines*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) where the Court found that the exception applied to the FAA's establishment and operation of a spot checking system of aircraft. *Id.* Also, in *Johnson v. United States Department of Interior*, 949 F.2d 332 (10th Cir. 1992), the court upheld the discretionary function exception in the face of charges that the National Park Service failed to adequately regulate climbers, failed to place additional warnings, and failed to adequately conduct rescue operations, even though the Park Service had in place some regulations of climbers, had some warning signs, and maintained some regulations concerning rescues.

■ Therefore, it is clear that merely because a statute or regulation may contain some specific guidance for the USFS to follow, it does not limit or deny the existence of discretion for implementing that specific policy. If Plaintiffs' view were adopted, the discretionary function exception would be eviscerated, and the United States would be forced to choose between two equally unpleasant alternatives-performing no regulation or oversight whatsoever, or maintaining full oversight and regulation of the entire spectrum of sports conducted on Federal land. It seems clear that allowing oversight and general inspection powers with no specific designation of how to carry out such authority is the essence of discretion. That is what has occurred in this matter.[6]

---

6. Furthermore, Plaintiffs' heavy reliance on the section of the Winter Operating Plan, page 10, entitled "Jumping Policy" which states: "Inverted aerial maneuvers on skis/snowboard expose the skier to substantial risk of major debilitating injury. Because of the inherently high potential of tragic injury, inverted aerial maneuvers are prohibited at

■ In reviewing the statutes, regulations, and policies which impact this action, it is apparent that the issuance of a ski area permit to Defendant JHMRC allowing JHMRC to conduct and create a terrain park is purely a matter of discretion for the USFS. *See* 16 U.S.C. § 497b. Furthermore, the same regulations, policies, and statutes merely designate broad responsibilities of oversight and management by the USFS of Defendant JHMRC's operation of the ski area and terrain park as well as snowboarding at these facilities. Thus, the specific manner in which snowboarding should be regulated and the enforcement of the broad oversight and inspection powers are left to the guided judgment of the USFS.

There are no federal statutes, regulations, or policies that specifically prescribe how a man-made ski and snowboard terrain park on National Forest land should be operated; nor are there any rules, regulations, policies, or statutes which specifically prescribe how the USFS should delegate the operation and primary safety responsibilities to Defendant JHMRC, or how the USFS should specifically carry out its monitoring duties of Defendant JHMRC's operation and regulation of snowboarding at the terrain park. Therefore, the Court **FINDS** that the manner in which the USFS carries out its oversight, management and regulation of the functions delegated to Defendant JHMRC is clearly reserved to the judgment of the USFS.

### III. Is the Conduct Based on Considerations of Public Policy

■ As previously noted the second prong of the discretionary function exception only applies if the judgment is of the kind Congress intended to shield through the exception. *Berkovitz v. United States*, 486 U.S. 531, 536–37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *Johnson v. United States Department of Interior*, 949 F.2d 332, 336 (10th Cir.1992). Discretionary actions that Congress intended to shield are only those "governmental ... decisions based on considerations of public policy-decisions grounded in social, economic and political policy." *Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. 1954; *Johnson*, 949 F.2d at 336 (quoting *Varig Airlines*, 467 U.S. at 814, 104 S.Ct. 2755).

Plaintiffs claim that Defendant United States' failure to close or make the tabletop jump safe was not grounded in any social policy, and that the Government's failure to warn of the hazardous conditions of the tabletop jump was not based on any consideration of public policy. The United States argues that granting the ski area permit to JHMRC, and then delegating the primary duty to ensure the safety and protection of the public at the ski area and terrain park to Defendant JHMRC was an exercise of discretion laden with public policy considerations. The United States claims that policy considerations impacting its decision not to regulate snowboarding and placing the primary safety responsibilities on Defendant JHMRC were made based upon concerns surrounding the lack of manpower, economic resources, and ex-

JHMR" to show that regulations prescribed a specific course of conduct does not change the outcome stated above. This provision demonstrates one particular area that has not been left entirely to the discretion of USFS officials. The provision merely states that inverted aerial maneuvers are prohibited at JHMRC. It does not indicate any specific

manner in which these maneuvers are to be prohibited by the USFS, nor does it prohibit the use of non aerial jumps. Therefore, the USFS's decision to allow JHMRC to determine how to prevent these types of maneuvers, and what other type of jumps to allow, which do not facilitate these type of maneuvers, is a matter of judgment left to the USFS.

pertise to regulate snowboarding at the terrain park and ski area on a full-time, daily basis. The United States also argues that its decisions were based upon policy considerations of limiting governmental involvement in snowboarding, a sport in which the participants, like most athletes, desire freedom from governmental interference in their sport.

In analyzing Plaintiffs' arguments, Plaintiffs' claim of negligent design, maintenance, control, operation, supervision, and regulation of the terrain park and Defendant JHMRC should be addressed separately from Plaintiffs' failure to warn claim. *Johnson*, 949 F.2d at 337.

Regarding Plaintiffs' claims of negligent design, maintenance, control, operation, supervision, and regulation: the decision of if and when to grant ski area permits, and then how to delegate the primary safety responsibilities, regulation of snowboarding at the ski area and terrain park, while maintaining a broad degree of oversight and control of these activities goes to the very essence of the USFS's discretion. By its very nature, the decision of the USFS regarding the regulation of snowboarding and the oversight of the ski area permitee, Defendant JHMRC, involves decisions of competing policy considerations. Broadly stated, these policy considerations include resource availability, and the appropriate degree of governmental interference with a recreational activity on Federal land.

The United States has delegated the responsibility for safety and the regulation of snowboarding to the Defendant JHMRC based upon policy considerations that the United States lacks the manpower, economic resources, and expertise to regulate snowboarding as well as maintain the primary inspection and oversight of the ski areas and terrain parks on Federal land. These policy concerns are heightened by the fact that there are 71 permitees on 3 million acres in the Bridger Teton National Forest alone. Thus, it is clear that the United States has made a policy determination that in order to facilitate and allow outdoor recreation on National Forest land in compliance with MUYSA and NFMA, the USFS must be able to delegate to Defendant JHMRC, through the permit process, the primary responsibility to operate and maintain the activities within the ski area and thus the terrain park; otherwise, such a responsibility would overwhelm, and likely fall outside the scope of the USFS function. Further, the United States' decision to place these duties of regulation and operation of the ski area and terrain park on Defendant JHMRC clearly demonstrates a considered policy decision to avoid costly regulation in an arena where the USFS has much less expertise than the primary regulator, Defendant JHMRC.

The United States' decision to delegate the responsibilities regarding the ski area, as well as its choice to limit governmental interference with snowboarding is based on the United States' decision to maintain the appropriate degree of governmental involvement with a recreational activity on Federal Land. The position of the United States in balancing its level of involvement in snowboarding appears to be based upon a number of policy factors including the fact that snowboarders and skiers, like most athletes, value the engagement in their sport free from governmental interference. Further, it is not the responsibility of the United States Government to establish and determine the detailed rules and regulations of sports such as snowboarding which are conducted on Federal Land.

It is apparent that in order to maintain winter recreational activities on Federal land and to prevent undue governmental intrusion into such sports, the United States has delegated the various safety,

management, and regulatory duties of the ski area and terrain park to Defendant JHMRC. Thus, the decision of when and how to regulate snowboarding and the ski area permitee's activities go to the very essence of the USFS discretion in maintaining the broad statutory objective of allowing outdoor recreation on National Forest land. These decisions, as shown above, involve the delicate balancing of competing policy considerations pertaining to the availability of precious governmental resources and the appropriate degree of governmental interference with a recreational activity, and is therefore protected by the FTCA's discretionary function exception.[7]

Regarding Plaintiffs failure to warn claims, Plaintiffs mistakenly argue that *Boyd v. United States*, 881 F.2d 895 (10th Cir.1989) and a series of other cases, place the failure to warn outside the scope of the discretionary function exception. *See Johnson v. United States Department of Interior*, 949 F.2d 332, 337 (10th Cir.1992). In *Johnson*, the Tenth Circuit found that "a decision not to warn still may be a policy decision or part of a policy decision protected by the discretionary function exception." *Id.*

In *Boyd*, the court found that the Army Corps of Engineers' failure to warn swimmers of potential dangers was not shown to be part of the Corp's zoning decision to dedicate part of the lake to unrestricted use. *Johnson*, 949 F.2d at 338. "In other words the government's failure to warn was not connected to the policy decision which created the hazard." *Id.* (citing *Zumwalt v. United States*, 928 F.2d 951, 955 (10th Cir.1991)). However, unlike the failure to warn in *Boyd* and the other cases cited by Plaintiffs, the Defendant United States' decision not to place or require additional warnings was clearly part of its overall policy decision to delegate management, regulation, and operation of the ski area and terrain park to Defendant JHMRC, as well as its desire to avoid intrusive governmental regulations. Thus, the decision not to place or require additional warnings at the terrain park was a decision by the United States that was a component of an overall policy decision to delegate these duties to Defendant JHMRC, which this Court has found to be protected by the discretionary function exception, and therefore the decision not to place or require additional warnings is thereby protected by this exception. *Johnson*, 949 F.2d at 338.

The USFS's judgment in deciding how to delegate and manage its broad safety, oversight, and inspection responsibilities of Defendant JHMRC, as well as snowboarding at the ski area and terrain park is precisely what the Supreme Court had in mind when it cautioned against "judicial second guessing." *Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. 1954. As the protector and manager of public lands the federal government, through the USFS, is en-

---

7. Plaintiffs' reliance on *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), to argue that the United States is liable for failing to maintain the safety of the terrain park is misplaced. In *Indian Towing* the Court found that the Governments decision to erect the lighthouse, for the purpose of guiding ships, was protected by the discretionary function of the FTCA, yet the failure to maintain the lighthouse was not protected by the exception. *Id.* at 69, 76 S.Ct. 122. The present action is distinguishable from *Indian Towing*. In *Indian Towing* the United States erected the lighthouse, whereas in the present action the United States did not create the ski area or terrain park. The Government merely allowed Defendant JHMRC, through the established special permit process, to establish these recreational sites. Thus, the United States does not have the same duty to maintain the ski area and terrain park as it did the lighthouse that it erected in *Indian Towing*.

trusted with many discretionary decisions and these actions should not be hampered by hindsight judgments of judges and juries. *Thune v. United States,* 872 F.Supp. 921, 924 (D.Wyo.1995); citing *Zumwalt v. United States,* 928 F.2d 951, 956 (10th Cir.1991).

Therefore, the USFS actions and decisions regarding its delegation of the primary safety obligations and operational duties of the ski area to Defendant JHMRC, while also maintaining broad oversight of the ski area and terrain park at Jackson Hole Mountain Resort is a discretionary determination based upon considerations of public policy that are protected by the discretionary function exception.

The finding of the Court in this matter is further supported by similar decisions in this and other circuits. In *Johnson v. United States Department of Interior,* 949 F.2d 332 (10th Cir.1992), the court applied the FTCA's discretionary function exception to actions of the National Park Service regarding mountain climbing in Grand Teton National Park, the Park Services decision not to place additional warnings regarding mountain climbing, and the Park Rangers' decisions of if and when to conduct rescue operations. *Id.* at 337–38, 340. In *Thune v. United States,* 872 F.Supp. 921 (D.Wyo.1995), this Court applied the discretionary function exception to actions of a Forest Service employee who started a controlled forest fire that burned out of control and caused property damage. *Id.* at 923–24. In *Tippett v. United States,* 108 F.3d 1194 (10th Cir. 1997), the court upheld the application of the discretionary function exception to the actions of a National Park Ranger who was directing snowmobile traffic around moose, when an individual who was directed around the moose was charged and kicked by the moose, causing the individual's neck to be broken. *Id.*

In *Childers v. U.S.,* 40 F.3d 973 (9th Cir.1994), the court applied the protections of the discretionary function exception to the National Park Service regarding its decision not to place warning signs on unmaintained trails during the winter in Yellowstone National Park. *Id.* Finally, in *King v. U.S. Forest Service,* 647 F.Supp. 20 (N.D.Cal.1986), a case which was factually similar to the present, the USFS issued a special use permit to a company to operate a river rafting expedition on the Yuba River. *Id.* at 21. The plaintiff was injured while rafting and sued the United States for its failure to warn and regulate rafting as well as failing to regulate the special use permitee. *Id.* at 21. The *King* court applied the FTCA's discretionary function exception to the USFS on all counts, claiming that the Forest Service's decision not to warn and its regulation of the special use permitee were discretionary decisions based upon considerations of public policy. *Id.* at 21–22.

For the aforementioned reasons, the Court **FINDS** that Defendant United States' decisions regarding how to delegate primary safety responsibility and regulation of snowboarding and other activities at the ski area and terrain park at the Jackson Hole Mountain Resort, while also maintaining a broad oversight of these activities, are clearly the type of decisions and activities protected by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a). Therefore, the Court **HEREBY ORDERS** that Defendant United States' Motion to Dismiss is **GRANTED** and Plaintiffs' claims against Defendant United States are **DISMISSED.**

## IV. *Defendants' Motion for Summary Judgment*

### *Summary Judgment*

Summary judgment is appropriate "if the pleadings, depositions, answers to in-

terrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jenkins v. Wood,* 81 F.3d 988, 990 (10th Cir.1996) (quoting Fed.R.Civ.P. 56(c)). The court views the evidence in the light most favorable to the party opposing summary judgment. *Jenkins,* 81 F.3d at 990.

The party moving for summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the nonmoving party's claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to establish the existence of an essential element of the claims on which they bear the burden of proof at trial. *Id.* And "[w]hile the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the nonmovant's claim." *Jenkins,* 81 F.3d at 990.

To satisfy this burden, the nonmoving party must go beyond the pleadings and designate specific facts to make a showing that there is a genuine issue for trial. *Ford v. West,* 222 F.3d 767, 774 (10th Cir.2000) (quoting *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir.1998)). In order to successfully resist summary judgment, there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). And "[t]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the non-

movant presents facts such that a reasonable jury could find in favor of the nonmovant." *Lawmaster v. Ward,* 125 F.3d 1341, 1347 (10th Cir.1997).

### *Wyoming Recreation Safety Act*

Defendant JHMRC [8] argues that Plaintiffs' suit is prohibited by the Wyoming Recreation Safety Act as Defendant did not owe a duty of care to the Decedent to eliminate the inherent risks of snowboard jumping in a specially designated terrain park. In support of this claim, Defendant contends that it is an inherent risk of snowboard riding and jumping in a terrain park that the snowboarder may land improperly causing severe injuries to the rider, and that Decedent's fatal injuries resulted from such an inherent risk.

Plaintiffs counter by arguing that snowboard jumping is not necessary or essential to the sport of snowboarding or the operation of the ski area, and therefore, the known dangerousness of the jump demonstrates the existence of genuine issues of material fact as to whether Decedent's fatal accident was the result of an inherent risk of snowboarding over a nonessential man-made tabletop jump. Plaintiffs contend that in light of the specific factual background concerning the creation and maintenance of the tabletop jump, as well as the nonessential nature of such a jump, Decedent's fatal injuries were not caused by an inherent risk of the sport of snowboarding.

"In order to prevail on any negligence action, a plaintiff must first establish that the defendant owed him or her a duty of care." *Cooperman v. David,* 214 F.3d 1162, 1165 (10th Cir.2000); (quoting *Halpern v. Wheeldon,* 890 P.2d 562, 565 (Wyo. 1995)). Whether the Defendant in the

---

**8.** The present motion was filed as a joint Motion for Summary Judgment by the Defendants JHMRC and the United States. However, as the United States has been dismissed

from this action pursuant to the FTCA's discretionary function exception, the Court in discussing the present motion will refer to JHMRC as the "Defendant."

present case owed the Decedent a duty of care depends on whether, under the specific facts and circumstances of this case, the Decedent's fatal crash landing while he was snowboard jumping off a man made tabletop jump, was an inherent risk of snowboarding within the meaning of the Wyoming Recreation Safety Act. Thus, Plaintiffs carry the burden of establishing either that the Wyoming Recreation Safety Act does not apply or that Decedent's injuries were caused by an non–inherent risk under the Recreation Safety Act. *Carden v. Kelly,* 175 F.Supp.2d 1318, 1323 (D.Wyo.2001).

■ The Wyoming Recreation Safety Act Provides:

(a) Any person who takes part in any sport or recreational opportunity assumes the inherent risks in that sport or recreational opportunity, whether those risks are known or unknown, and is legally responsible for any and all damage, injury or death to himself or other persons or property that results from the inherent risks in that sport or recreational opportunity.

(b) A provider of any sport or recreational opportunity is not required to eliminate, alter or control the inherent risks within the particular sport or recreational opportunity.

(c) Actions based upon negligence of the provider wherein the damage, injury or death is not the result of an inherent risk of the sport or recreational opportunity shall be preserved pursuant to W.S. 1–1–109.

WYO.STAT. § 1–1–123. The Wyoming Recreation Safety Act further provides the following definitions:

(i) *"Inherent risk" with regard to any sport or recreational opportunity means those dangers or conditions which are characteristic of, intrinsic to, or an integral part of any sport or recreational opportunity;*

(ii) *"Provider"* means any person or governmental entity which for profit or otherwise, offers or conducts a sport or recreational opportunity. This act does not apply to a cause of action based upon the design or manufacture of sport or recreational equipment or products or safety equipment used incidental to or required by the sport or recreational opportunity;

(iii) *"Sport or recreational opportunity" means commonly understood sporting activities including* baseball, softball, football, soccer, basketball, swimming, hockey, dude ranching, *nordic or alpine skiing,* mountain climbing, river floating, hunting, fishing, back country trips, horseback riding and any other equine activity, snowmobiling and *similar recreational opportunities;*

Wyo.Stat. § 1–1–122 (emphasis added). For purposes of the present action, the parties agree and the Court finds that although not specifically listed in the Wyoming Recreation Safety Act, snowboarding is a sport or recreational activity covered by the Act. Snowboarding is conducted in a manner very similar to skiing—both are conducted on the same slopes, and in fact, the terrain park where Decedent's fatal accident occurred was open to both snowboarders and skiers.

The Wyoming Recreation Safety Act limits the duty that a provider of a recreational activity owes to a participant. *Cooperman,* 214 F.3d at 1165, (referring to *Halpern v. Wheeldon,* 890 P.2d 562, 565 (Wyo.1995)). However, the "intent behind the Recreation Safety Act was not to preclude parties from suing for a provider's negligence, it was merely to stop people from suing providers for those risks that were inherent to a sport." *Madsen v. Wyoming River Trips,* 31 F.Supp.2d 1321, 1328 (D.Wyo.1999). Thus, a cause of ac-

tion still exists for the negligence of a provider under the Act. *Id.*

Generally under Wyoming law, "the issue of duty is decided by the Court as a matter of law." *Cooperman,* 214 F.3d at 1166 (referring to *Halpern,* 890 P.2d at 565–566). However, the Wyoming Supreme Court has held that when a genuine issue of material fact exists, the issue of duty is a question of fact for the jury, and thus whether a risk is inherent or not under the Wyoming Recreation Safety Act is a question of fact for the jury. *Cooperman,* 214 F.3d at 1166 (citing *Halpern,* 890 P.2d at 565–566). The Wyoming Supreme Court in *Halpern* conceded that when no material questions of fact exist, the district court may decide as a matter of law that the provider does not owe a duty to the participant under the Recreation Safety Act. *Id.*

In order to determine whether Plaintiffs' cause of action survives Defendants' Motion For Summary Judgment, the Court cannot simply look to the abstract character of the inherent risks of snowboarding; instead the Court must look to the specific facts of the present case to determine whether there is a duty owed to the Plaintiff. *Madsen,* 31 F.Supp.2d at 1328; *Carden,* 175 F.Supp.2d at 1328. In the context of horseback riding the Tenth Circuit elaborated on this fact specific standard by stating:

> Simply because some risks are inherent in horseback riding, however, does not mean that all risks of falling from a horse are necessarily inherent; instead, it is necessary to look factually at the specific risk to which the rider was exposed. *When attempting to determine whether a risk is inherent to a sport, we can not look at the risk in a vacuum, apart from the factual setting to which the rider was exposed. And, we must evaluate the risk at the greatest level of*

> *specificity permitted by the factual record.*

*Cooperman,* 214 F.3d at 1167 (emphasis added). "Thus, the duty question is best resolved by framing the question correctly." *Madsen,* 31 F.Supp.2d at 1328; *Carden,* 175 F.Supp.2d at 1328.

■ Properly framed, the duty question in the present case is whether the loss of control, which results in a fatal crash landing by an experienced sixteen year old snowboarder, who was familiar with the tabletop jump is an inherent risk of snowboard jumping and riding over a man-made tabletop jump, which had been altered the night before the accident, tested the morning of the accident, used by a number of other snowboarders on the day of the accident, and is located in a specially designated roped-off terrain park containing other man-made jumps and obstacles, with some warning signs, which is located on National Forest land. Framed in this manner, the Court **FINDS** there are no genuine issues of material fact and that the Decedent's fatal accident, when properly framed and viewed under the facts of the present case, was an inherent risk of snowboard jumping and riding over a man-made tabletop jump in a specially designated terrain park.

Plaintiffs contend that snowboard jumping is not an essential aspect of the sport of snowboarding, and that an inherent risk of snowboarding would include hitting a tree or another snowboarder. The Court cannot accept Plaintiffs' arguments. First, nothing in the Wyoming Recreation Statute indicates that the manner in which a subset of a broad sport is carried out must be essential to the broad sport. Additionally, snowboard jumping and riding in a terrain park is clearly a subset of the general sport of snowboarding and this subset may be viewed as essential by some and not by others. However, the Court

need not decide this issue, as it is enough that snowboard jumping and riding at a specially designated terrain park is clearly a subset or type of snowboarding which constitutes inclusion in the broad sport of snowboarding—as this subset of snowboarding is conducted at a great number of ski areas by a number of snowboarders. Drawing comparisons from the facts of prior Wyoming Recreational Safety Act cases, snowboard jumping and riding at a specially designated terrain park is to the generic sport of snowboarding what a rodeo is to broad recreational sports of trail riding or dude ranching.

Second, Plaintiffs' contention that hitting a tree is an inherent risk of snowboarding does not apply to the subset sport of snowboard jumping and riding in a specially designated terrain park. Clearly, if the Decedent would have hit a tree while jumping in the terrain park, such an incident would not have been an inherent risk of snowboard jumping and riding in a specially designated terrain park; as such an accident would not be a danger that is an inherent risk in a sport that is conducted in a specially designated and cordoned off area were trees are not part of the park's obstacles.

The Court's finding that the Decedent's fatal injuries were the result of an inherent risk of snowboard jumping and riding over a man-made tabletop jump in a specially designated terrain park is consistent with the Court's decisions in both *Madsen v. Wyoming River Trips, Inc.*, 31 F.Supp.2d 1321 (D.Wyo.1999), and *Carden v. Kelly*, 175 F.Supp.2d 1318 (D.Wyo.2001). In *Madsen*, this Court found there was a

genuine issue of material fact as to whether being "jostled around and bumping heads while people are in the front of the boat (and not in seats) is an inherent risk of river rafting." *Madsen*, 31 F.Supp.2d at 1329. Similarly, in *Carden* this Court found a genuine issue of material fact as to whether a horse, (which experienced difficulty throughout a day trail ride) stumbling and falling while on a steep and rocky slope with no marked trail consequently causing injury to an inexperienced rider, is an inherent risk of a guided day trip trail horseback. *Carden*, 175 F.Supp.2d at 1328. In both *Madsen* and *Carden* when properly framed in light of the specific facts of those cases the Court found genuine issues of material fact as to whether the resulting injury was an inherent risk of the particular sport.

However, in the present case, when properly framed, in light of the specific facts of the present action,[9] it is apparent that these specific facts demonstrate that the Decedent's injuries were the result of an inherent risk of snowboard jumping and riding at a specially designated terrain park.

Clearly, when one engages in a sport which entails jumping or riding a snowboard over man-made jumps in an area specially designated and designed for such activities, it is an inherent danger, which is intrinsic to such a sport that the participant may lose control and land improperly causing severe or fatal injuries. Much like the injuries resulting from the loosely cinched saddle in *Cooperman v. David*, 214 F.3d 1162 (10th Cir.2000), the fatal injuries

---

**9.** Including the facts that: the Decedent was an experienced snowboarder who had used the terrain park a number of times, including the tabletop jump in question the night before his fatal injury, that the tabletop jump although altered the night before Decedent's accident was tested the morning of the accident and the jump was used a number of

times by various other riders the day of Decedent's fatal accident, combined with the fact that the Decedent was engaged in the sport of snowboard jumping and riding in a specially designated terrain park that contained some warning signs, and was roped off from the other areas of the ski resort.

to an experienced snowboarder resulting from snowboard jumping and riding over a man-made tabletop jump in a specially designated terrain park is an inherent risk of such a sport.

For the aforementioned reasons, the Court **FINDS** that there is no genuine dispute of material fact that would preclude summary judgment in this matter. Decedent's fatal injuries, resulting from his failed landing while engaged in the sport of snowboard jumping and riding over a man-made tabletop jump in a specially designated terrain park were the result of an inherent risk which is intrinsic to such a sport. Therefore, the Court **HEREBY ORDERS** that Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiffs' claims against Defendant JHMRC are **DISMISSED.**

### CONCLUSION

For the aforementioned reasons, the Court **FINDS** that the decisions of the Defendant United States regarding the regulation of snowboarding as well as its regulation of Defendant JHMRC's duties of operating and safely maintaining the ski area and terrain park, were matters of judgment and choice based upon public policy considerations which are protected by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a). Further, there are no genuine issues of material fact as to whether the fatal injuries suffered by the Decedent from his failed landing attempt while snowboard jumping and riding over a man-made jump at a specially designated terrain park were caused by an inherent risk of such a sport.

Therefore, the Court **HEREBY ORDERS** that Defendant United States' Motion to Dismiss is **GRANTED,** and Plaintiffs' claims against Defendant United States are **DISMISSED.** Further, the Court **ORDERS** that Defendants' Motion for Summary Judgment is **GRANTED,**

and Plaintiffs' claims against Defendant JHMRC are **DISMISSED.**